## William Gene BRENT, Appellant,

v.

## The STATE of Texas, Appellee.

### No. 01-94-00635-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 21, 1995.

---

**36**

Brigitte L. Peters, Sugar Land, for Appellant.

John B. Holmes, Jr., Keli P. Roper, Jane Waters, Houston, for Appellee.

Before WILSON, TAFT and PRICE,* JJ.

## OPINION

PRICE, Justice (assigned).

A jury found appellant, William Gene Brent, guilty of capital murder, and the trial judge sentenced him to confinement for life. We affirm.

### The Facts

Appellant does not challenge the sufficiency of the evidence, so we set out only those facts that are relevant to his five points of error and that aid the reader's fundamental understanding of the case.

Oscar Mendez, Marcelino Torres, and Jose Solis wanted to buy some cocaine. Mendez' brother, Ruben Yanez, approached appellant about making a deal. Appellant arranged for one of his acquaintances, Andre Sloan, to sell Mendez, Torres, and Solis some cocaine. Sloan told appellant to rent a motel room where the men could make the transaction. Three other men—Dennis Smith, Phil Givens, and Marcus Cleveland Douglas—assisted appellant and Sloan in their preparations.

Appellant and Sloan decided that, instead of selling genuine cocaine to Mendez, Torres, and Solis, they would exchange other matter—wrapped so as to appear to be packages of cocaine—for the men's money. Appellant, however, was afraid that when the men deduced that they had been cheated, they would take revenge on appellant's family; each of them knew where appellant's family lived. Thus, appellant proposed that when the men arrived at the meeting place with the money, they should just be killed on the site.

A room was rented, and the bogus packages were prepared. Just before the time of the meeting, Givens and Douglas hid in the room's bathroom. Appellant and Sloan received Mendez, Torres, and Solis in the room, where they shot and killed all of them and took the money. A maid found the three bodies in the room the next morning.

Appellant and Sloan spent the money lavishly, attracting the attention of appellant's girlfriend's mother. Houston Police, tipped off by Yanez, obtained an arrest warrant for appellant. They knew where to find appellant based on information provided by appellant's girlfriend's mother. The police arrested appellant, finding at the scene a bank bag and purse containing approximately $9000 and many newly purchased items.

### The Arrest Warrant

In his first two points of error, appellant argues that the trial judge erred in not suppressing evidence seized pursuant to the execution of the warrant for appellant's arrest.[1] According to appellant, the affidavit for the arrest warrant was unsigned, and thus the evidence seized pursuant to its execution should not have been admitted at trial.

■ At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be attributed to their testimony. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993). The judge may believe or disbelieve all or any part of any witness' testimony. *Id.*

■ We view the evidence produced at the suppression hearing in the light most

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. The evidence is the money and the newly purchased items referred to in the fact recitation above. The items included men's sport clothes, men's shoes, underwear, men's cologne, women's clothes, and women's shoes.

favorable to the judge's ruling. *Nored v. State*, 875 S.W.2d 392, 395 (Tex.App.—Dallas 1994, pet. ref'd). We will not disturb the judge's findings unless the judge committed a clear abuse of discretion. *Alvarado*, 853 S.W.2d at 23. We must decide if those findings are supported by the record; if they are, we do not disturb them, and consider only whether the judge properly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). If the judge's ruling is correct under any theory of law applicable to the case, we must uphold the ruling. *Id.* "This principle ... is especially true with regard to admission of evidence." *Id.*

Code of Criminal Procedure article 15.05(4) states that the complaint in support of an arrest warrant "must be signed by the affiant by writing his name or affixing his mark." TEX.CODE CRIM.PROC.ANN. art. 15.05(4) (Vernon 1977). The State does not dispute that the affidavit was unsigned (and the record plainly shows that it was). Rather, the State asks us to apply the rationale of *Vance v. State*, 759 S.W.2d 498 (Tex.App.—San Antonio 1988, pet. ref'd), to this case, and hold that, because the judge who issued the arrest warrant first required the affiant, Officer U.P. Hernandez, to *verbally* swear to the information contained in the affidavit, the affidavit was sufficient even though unsigned.

In *Vance*, the court considered whether a search warrant was invalid where the complaint prepared for the warrant's issuance was unsigned. 759 S.W.2d at 499. The officer who prepared the complaint, though he did not sign the affidavit attached to the complaint, verbally swore to the complaint in front of the judge who issued the search warrant. *Id.* The court held that the verbal oath was sufficient, stating that the important thing is that there was, in fact, an oath; regardless of whether the oath was by signature or by oral testimony, the complaint was indisputably sworn. *Id.* at 500.

We have no quarrel with *Vance*, but we cannot properly apply its reasoning here. In *Vance*, the relevant statute was Texas Code of Criminal Procedure article 18.01(b), which stated at the time (and still does today) that "[a] sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." TEX.CODE. CRIM. PROC.ANN. art. 18.01(b) (Vernon Supp.1995). Here, the relevant statute is Code of Criminal Procedure article 15.05(4), which, as noted above, states that the complaint in support of an arrest warrant "must be signed by the affiant by writing his name or affixing his mark." TEX.CODE CRIM.PROC.ANN. art. 15.05(4) (Vernon 1977).

■ Article 18.01(b) only requires that the affidavit be "sworn," thus leaving room for a verbal, as well as a written, oath. Article 15.05(4), however, does not allow for a verbal oath; it specifically states that the arrest warrant complaint "must be *signed* by the affiant[.]" (Emphasis added.) It proceeds to state how the complaint must be signed: by the affiant *"writing* his name or affixing his mark." (Emphasis added.) It is clear to us that the legislature, by utilizing words like "signed" and "writing," intended an arrest warrant affidavit to carry, not just the oath of the affiant, but specifically the oath of the affiant as represented by his *signature*. Thus, we cannot apply the *Vance* rationale here.

The State also argues that the judge's decision was correct under Code of Criminal Procedure article 38.23(b). We agree.

■ Under article 38.23(a), no evidence obtained by an officer in violation of a constitution or law of either Texas or the United States may be admitted into evidence against the defendant in a criminal trial. TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp. 1995). Article 38.23(b) states: "It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX.CODE CRIM.PROC.ANN. art. 38.23(b) (Vernon Supp.1995). The record demonstrates that all of article 38.23(b)'s requirements were met.

First, the evidence was obtained by law enforcement officers "acting in objective good faith reliance" upon the warrant. The officers who arrested appellant testified that

they believed the arrest warrant was valid and relied on it in good faith to arrest appellant. One of them testified that he was not aware of the lack of Officer Hernandez' signature until the day of the suppression hearing. Officer Hernandez, who was one of the arresting officers, testified that, when he presented the warrant to the judge for the judge to issue, the judge "read the whole pocket warrant itself, read the body of it and then he questioned me as to whether I swore this was the truth, the whole truth and that everything in here was exactly the way it was supposed to and I said I did." Officer Hernandez also testified that he formally swore to the truth of the affidavit; that is, he raised his hand and swore that all the information was correct. He stated that the lack of his signature was an "oversight" on his part and that he was not aware that he had not signed the affidavit until the day of the suppression hearing. The evidence shows that the arresting officers believed the arrest warrant was valid; did not learn of the lack of signature until well after the warrant's execution; and relied on it in good faith. One of them—Officer Hernandez—knew that the affidavit was supported by sworn testimony, since he was the one who supplied that testimony. We hold that the evidence was obtained by law enforcement officers "acting in objective good faith reliance" upon the warrant.

Second, the warrant was issued by a neutral magistrate. The district court judge who issued the warrant was a "magistrate." TEX.CODE CRIM.PROC.ANN. art. 2.09 (Vernon Supp.1995) (entitled "Who are magistrates"). Appellant does not call into question his neutrality, and the record supports a finding that he was neutral.

Third, the warrant was based on probable cause. Appellant does not argue that the affidavit did not state probable cause, opining instead that the issue is "debatable." The arrest warrant affidavit states that Officer Hernandez believes that appellant "did, in Harris County, Texas, on or about 4–6–92, intentionally and knowingly delivered [sic] a controlled substance, namely cocaine." The affidavit represents that Officer Hernandez,

on April 7, 1992, went to the hotel room where the "dope deal" was to occur and found the three victims dead on the floor; that the victims had been shot in the head; that the gunshots were the cause of death; and that Yanez, a credible person with no known criminal record who knows appellant, told Officer Hernandez that appellant told Yanez the details of how the "dope deal" was to happen.[2] The affidavit also recites those details as told by appellant to Yanez and Yanez to Officer Hernandez. It also states that Yanez told Officer Hernandez that Yanez was present during a phone conversation between appellant and Mendez wherein appellant and Mendez confirmed the location of the deal. The affidavit states probable cause to arrest appellant for the offense of delivery of a controlled substance (cocaine).

The requirements of article 38.23(b) were met in this case. Thus, even thought the arrest warrant was invalid because Officer Hernandez did not sign the affidavit, the evidence seized pursuant to the warrant's execution was admissible against appellant at trial. The judge did not err in denying appellant's motion to suppress.

■ We also note that the main purpose of the exclusionary rule "is to deter police activity that could not have reasonably been believed to be lawful by the officers committing the same." *Jimenez v. State*, 838 S.W.2d 661, 665 (Tex.App.—Houston [1st Dist.] 1992, no pet.). In this case, that purpose would not be served by excluding the evidence at issue.

Appellant contends that, because the arrest warrant was invalid, the admission of the evidence seized pursuant to the execution of the warrant violates the federal and Texas Constitutions and "applicable Texas statutes." Although the warrant was invalid, the evidence seized pursuant to its execution was nonetheless admissible under article 38.23(b). Thus, the fact that the warrant was invalid is not dispositive of the question of whether the evidence should have been admitted; under

---

**2.** Appellant did not tell Yanez that, instead of completing the deal by handing over cocaine, appellant actually planned to kill the three buyers and take their money.

article 38.23(b), the evidence was admissible *even though* the warrant was invalid.[3]

We overrule points of error one and two.

### The Photograph

In point of error three, appellant argues that the trial judge erred in admitting a photograph of one of the dead men over appellant's rule 403 objection. The photograph, State's Exhibit 69, depicts the body of Jose Solis from approximately his waist to the top of his head. He is lying on his back with his arms stretched above his head. Blood covers a significant part of his face. From the middle of his face, "trails" of blood flowed outward in various directions and dried in place.

■ Once a defendant objects to a photograph on the basis of rule 403, the trial judge must weigh the probative value of the photo against its potential for causing unfair prejudice. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The trial court must consider the inherent tendency the photo may have to encourage resolution of a material issue on an improper emotional basis and balance that tendency, if any, against the host of factors affecting probativeness, including the relative weight of the photo and the degree to which its proponent might be disadvantaged without it. 840 S.W.2d at 429. In determining whether a photo would tend to encourage the resolution of a material issue on an improper emotional basis, the trial judge should consider such factors as, among others, (a) gruesomeness; (b) detail; (c) size (i.e., whether the photo was enlarged); (d) whether the photo is in color or black-and-white; (e) how "close-up" the photo is; and (f) whether the body is naked or clothed. *Id.* The trial judge should also consider whether the body, as photographed, has since the crime been altered in some way that might increase the grisliness of its appearance (for example, by autopsy). *Id.* We will reverse a trial judge's decision on the matter only if the judge abused his or her discretion, "i.e., only when

the trial court's decision was outside the zone of reasonable disagreement." *Id.*

■ Applying the relevant test here, we hold that the judge did not abuse her discretion in admitting the photo. While the photo is certainly unpleasant, it is not exceedingly gruesome. Judging by their descriptions, this photo is not nearly as lurid as the photos whose admission was approved in *Emery v. State*, 881 S.W.2d 702 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995), and *Narvaiz*, just to name two cases. The photo does not reveal much detail of its subject. It was not enlarged (as compared to the other photos admitted). The photo is in color, but is not an extreme close-up, and certainly is not an extreme close-up of the victim's face, the only bloody area visible in the photo. The victim's shirt is open and most of his chest is revealed, but there is nothing shocking about the appearance of the chest; there are no perceptible wounds and no blood is on it. At the time the photo was taken, the body had not, since the crime, been altered in some way that might increase the grisliness of its appearance. In short, the photo is not "so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing" it. *Narvaiz*, 840 S.W.2d at 429 (quoting *Fuller v. State*, 829 S.W.2d 191, 206 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993)).

We overrule point of error three.

### Ineffective Assistance

In points of error four and five, appellant contends that his trial counsel was ineffective because he "failed to keep [appellant] from testifying at a codefendant's trial, providing the State with impeachment material which prevented the appellant from testifying in his own defense."

Appellant testified in Sloan's trial. That testimony was not introduced in appellant's trial. Appellant asserts, however, that because his testimony in Sloan's trial gave the State material with which to impeach him

---

3. Appellant does not assert that article 38.23(b)    is itself unconstitutional or otherwise invalid.

should his testimony in his own trial deviate from his testimony in Sloan's trial, he was "prevented" from testifying at his trial. This is tantamount to arguing that his attorney should have warned him not to testify at Sloan's trial, because he would then not be able to testify differently with impunity at his own trial due to the fact that the State could impeach him.

No defendant has the right to testify free from impeachment. *Morgan v. State*, 891 S.W.2d 733, 736 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Nor does the mere threat of impeachment, standing alone, work to deprive a defendant of the ability to testify at his trial. *See id.* Simply put, "appellant was physically free to testify; he just chose not to." *Id.*

Because there is no right to be free from the threat of impeachment, appellant's trial counsel, as a matter of law, was not ineffective for not advising appellant not to testify at Sloan's trial because of the danger that the State might impeach appellant in his own trial with his testimony from the Sloan trial. A defendant does not have the right to testify differently from one trial—his codefendant's—to another—his own.

We overrule points of error four and five.

We affirm the judgment of the trial court.