Katlheen Diane Hunter v. State










WITHDRAWN 11-13-02





IN THE
TENTH COURT OF APPEALS
 

No. 10-01-407-CR

     KATHLEEN DIANE HUNTER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 220th District Court
Hamilton County, Texas
Trial Court # 01-03-07130
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Kathleen Diane Hunter appeals from her conviction for possession of methamphetamine. 
Hunter presents four issues: (1) whether an unsigned affidavit is sufficient to obtain a search
warrant; (2) if her motion to suppress was untimely, did she receive ineffective assistance of
counsel; and whether the evidence is (3) legally and (4) factually sufficient to sustain the
conviction. Finding the search warrant invalid but the evidence seized as a result nevertheless
admissible, and further finding the evidence to be legally and factually sufficient to support the
conviction, we will affirm the judgment.
BACKGROUND
      On January 4, 2001, Noland Hicks, a sergeant investigator of the Rural Area Narcotics Task
Force (RANTF), met with a confidential informant who claimed that Harold Hugh Hart and
Kathleen Diane Hunter possessed methamphetamine in their Hamilton County home. At
approximately 9:00 p.m. that day, he presented an affidavit to Charles Garrett, the county judge
of Hamilton County, to obtain a search warrant for the residence. Although Hicks was named as
the affiant in the supporting affidavit, he failed to sign it. He testified that he “swore” to the
contents of the affidavit before Judge Garrett, who signed the search warrant. Less than an hour
later, Hicks and other members of the Task Force executed the warrant.
      Hunter was alone when the officers entered the home. According to Hicks, “she had lots of
tracks or needle marks on her hands and arms.” Hicks also testified that Hunter “was always”
at the home and that she kept “clothing and stuff there.” While some officers searched the home
for contraband, Officer Cody Lee remained in the kitchen logging every item seized in order to
maintain an accurate inventory. As a result of the search, twelve items were found which might
have methamphetamine. They were:
      •    a flashlight with plastic bag and tissue containing some sort of residue;
 
      •    a teddy bear with a plastic bag inside it;
 
      •    another teddy bear with a red balloon inside it;
 
      •    a cigarette box containing one hand-rolled cigarette;
 
      •    a spoon with a residue substance on it;
 
      •    a box containing syringes;
 
      •    a leather case with a baggy inside it;
 
      •    a clear baggy;
 
      •    a plastic baggy containing wet coffee filters;
 
      •    a black plastic tube with wet coffee filters inside that had a white powder residue;
 
      •    a plastic container with wet coffee filters inside that also had a white powder residue; and
 
      •    a flashlight containing syringes and lithium strips.

Araceli Uptmor, a drug analyst for the Department of Public Safety, tested the items to determine
the presence and amount of methamphetamine, if any. Uptmor’s analysis revealed approximately
0.06 grams of methamphetamine and adulterants.
      Hunter was indicted for possession of less than one gram of methamphetamine. After she
filed a motion to suppress the evidence, which was denied, she pled “not guilty.” A jury
convicted her of the offense and assessed punishment at two years’ confinement in a state jail
facility. She then brought this appeal.
LEGAL SUFFICIENCY OF THE EVIDENCE
      Hunter’s third issue asserts that the evidence is legally insufficient to sustain her conviction
because mere presence where drugs are located is not sufficient to establish “possession.” Davis
v. State, 74 S.W.3d 90, 96 (Tex. App.—Waco 2002, no pet.). We address this issue before her
other issues because under it she is entitled to an acquittal if she is correct. See Edmonson v.
State, 951 S.W.2d 6, 6 (Tex. Crim. App. 1997) (per curiam). Furthermore, the admissibility of
evidence seized under the search warrant does not affect this issue because evidence erroneously
admitted at trial is considered in determining sufficiency of the evidence in criminal cases. See
Dunn v. State, 721 S.W.2d 325, 327 (Tex. Crim. App. 1986) (all of the evidence, both proper and
improper, must be considered in deciding the issue).
      In assessing the legal sufficiency of the evidence to support a conviction, we consider all the
evidence in the light most favorable to the prosecution and determine whether, based on that
evidence and reasonable inferences therefrom, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Holberg v. State, 38 S.W.3d 137, 139
(Tex. Crim. App. 2000). We are in the position of a final, due process safeguard, ensuring only
the rationality of the fact finder. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).
      An illegal drug can be jointly possessed with others. Davis, 74 S.W.3d at 96 (citing Martin
v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988)). Mere presence at the scene does not
prove possession; there must be evidence "affirmatively linking" the accused to the contraband
which shows the accused had knowledge of and control over the contraband. Id.
      "Affirmative links" is a shorthand expression to identify what must be proven in a prosecution
for the possession of illegal drugs. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995). An accused must not only have exercised actual care, control, or custody of the substance,
but must also have been conscious of her connection with it and have known what it was. 
Evidence which affirmatively links her to it suffices for proof that she possessed it knowingly. 
Id. This evidence may be direct or circumstantial. Id. In either case it must establish, to the
requisite level of confidence, that the accused's connection with the drug was more than just
fortuitous. Id. This is the whole of the so-called "affirmative links" rule. Id. It is still, just as
it always was, only a shorthand expression of what must be proven to establish that a person
possessed some kind of drug "knowingly or intentionally." Id.
      The evidence shows that Hunter had been living in the residence with Hart, Hart stored drugs
at the residence and used it as a distribution point, and he had given Hunter drugs for her personal
use. Some drugs, which Hart denied knowing about, were located in a kitchen cabinet. Hunter
admitted that she knew drugs had been periodically stored in the house, but denied knowing that
the drugs found in the search on the day of her arrest were there. She also said she had looked
for drugs and failed to find any. From this evidence, we conclude that a rational jury could have
found that Hunter knowingly possessed the drugs in question. Holberg, 38 S.W.3d at 139. We
overrule issue three.
SUPPRESSION OF EVIDENCE
      The validity of the search warrant is the basis for Hunter’s first issue. She filed a motion to
suppress the evidence obtained thereby, alleging that the warrant was invalid because the
supporting affidavit was not signed by Officer Hicks as “required by the Fourth and Fourteenth
Amendments to the Constitution of the United States of America, Article I, Section 9 of the
Constitution of the State of Texas, and Chapter 18 of the Texas Code of Criminal Procedure.”
Validity of the Search Warrant
      In 1988, a panel of the San Antonio court of appeals addressed this issue. Vance v. State, 759
S.W.2d 498, 500 (Tex. App.—San Antonio 1988, pet. ref’d). The majority held that the
magistrate’s reliance on an unsigned affidavit to issue a search warrant did not violate the Texas
Constitution’s requirement that no warrant shall issue without probable cause supported by oath
or affirmation, because the affiant had sworn to the magistrate that the contents of the affidavit
were true. Id. We disagree with that conclusion.
      Article I, Section 9 of the Texas Constitution reads:
The people shall be secure in their persons, houses, papers and possessions, from all
unreasonable seizures or searches, and no warrant to search any place, or to seize any
person or thing, shall issue without describing them as near as may be, nor without
probable cause, supported by oath or affirmation.

Tex. Const. art. I, § 9 (emphasis added). According to this provision of the Texas Constitution,
a search warrant can be issued only if (1) the things to be seized are described “as near as may
be,” (2) there is “probable cause” to believe that the things to be found are present at the location,
and (3) the facts in both (1) and (2) are “supported by oath or affirmation.” Id.
      The Code of Criminal Procedure provides:
No search warrant shall issue for any purpose in this state unless sufficient facts are first
presented to satisfy the issuing magistrate that probable cause does in fact exist for its
issuance. A sworn affidavit setting forth substantial facts establishing probable cause
shall be filed in every instance in which a search warrant is requested. The affidavit is
public information if executed, and the magistrate’s clerk shall make a copy of the
affidavit available for public inspection in the clerk’s office during normal business
hours.

Tex. Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp. 2002) (emphasis added). In light of
article 18.01(b) of the Code of Criminal Procedure, the three constitutional requirements must be
provided to the magistrate in the form of a “sworn affidavit.” Id.
      We begin our analysis with an interpretation of the word “affidavit” as it is used in article
18.01(b). Article 3.01 of the Code of Criminal Procedure states that “[a]ll words, phrases and
terms used in this Code are to be taken and understood in their usual acceptation in common
language, except where specially defined.” Id. art. 3.01 (Vernon 1977). Article 18.01, however,
does not provide a definition of the word.


 Also, the Court of Criminal Appeals has stated that
when an appellate court must interpret a statute, “we ordinarily give effect to [the] plain meaning”
of the statutory text. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). 
Accordingly, we will “give effect to [the] plain meaning” of the word “affidavit,” that is, how the
word is “taken and understood in [its] usual acceptation in common language.” Id.; Tex. Code
Crim. Proc. Ann. art. 3.01.
      The Boykin Court looked to a legal dictionary to ascertain the plain meaning of the statutory
term to be interpreted in that case. Boykin, 818 S.W.2d at 786. We follow the Court’s lead and
find that, according to Black’s Law Dictionary, an “affidavit” is “[a] voluntary declaration of
facts written down and sworn to by the declarant before an officer authorized to administer oaths.” 
Black’s Law Dictionary 58 (7th ed. 1999). Moreover, Webster’s International
Dictionary provides a similar definition and adds: “An affidavit must sufficiently identify the
person who makes it, usually by his subscribed signature.” Webster’s International
Dictionary 43 (2d ed. 1948). Accordingly, the plain meaning of the term “affidavit” is that the
affiant’s statement is in writing, sworn to, and signed by him.
      Hunter also points to a section in the Government Code, which pertains to the construction
of civil statutes and which defines an “affidavit” to be “a statement in writing of a fact or facts
signed by the party making it, sworn to before an officer authorized to administer oaths, and
officially certified to by the officer under his seal of office.” Tex. Gov’t Code Ann. §
312.011(1) (Vernon 1998) (emphasis added). We recently applied the definition of “affidavit”
from the Government Code to a criminal case, and because the Code of Criminal Procedure does
not provide a contrary definition, we once again rely on the Government Code’s definition of that
word for guidance. See Scott v. State, 80 S.W.3d 184, 190 (Tex. App.—Waco 2002, pet. filed). 
Section 312.011(1) states that the party making the affidavit must sign it. Tex. Gov’t Code Ann.
§ 312.011(1).
      Finally, under other decisions interpreting statutes in civil cases, an affidavit not signed by
the affiant is void. See, e.g., De Los Santos v. S.W. Texas Meth. Hosp., 802 S.W.2d 749, 755
(Tex. App.—San Antonio 1990, no pet.) (the lack of a properly notarized signature is a substantive
rather than formal defect in an affidavit); see Davis v. Sherrill, 52 Tex. Civ. App. 259, 113 S.W.
556, 557 (Tex. Civ. App.—Dallas 1908, no writ) (an affidavit not signed by affiant is void).
      Thus, we conclude that the term “sworn affidavit” used in article 18.01(b) of the Code of
Criminal Procedure requires a writing signed by the affiant, sworn to before an officer authorized
to administer oaths, and officially certified to by the officer under his seal of office. Tex. Code
Crim. Proc. Ann. art. 18.01(b); Tex. Gov’t Code Ann. § 312.011(1). Although the State
argues that the Hicks’s oversight is negligible, we find that a search warrant issued on an unsigned
affidavit has not been issued in accordance with the “sworn-affidavit” requirement of article
18.01(b). See Gonzales v. State, 577 S.W.2d 226, 231 (Tex. Crim. App. 1979) (“One signature
under oath is sufficient to comply with the requirement that the affidavit be sworn to before the
magistrate.”). Therefore, the evidence seized by virtue of the invalid warrant was subject to
suppression under article 38.23(a) of the Code of Criminal Procedure. Tex. Code Crim. Proc.
Ann. art. 38.23(a) (Vernon Supp. 2002).
Good Faith Exception to Article 38.23(a)
      But the State urges the application of article 38.23(b), the “good-faith” exception to article
38.23(a). Article 38.23 provides:
(a) No evidence obtained by an officer or other person in violation of any provisions of
the Constitution or laws of the State of Texas, or of the Constitution or laws of the United
States of America, shall be admitted in evidence against the accused on the trial of any
criminal case.
. . . 
 
(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence
was obtained by a law enforcement officer acting in objective good faith reliance upon
a warrant issued by a neutral magistrate based on probable cause.

Tex. Code Crim. Proc. Ann. art. 38.23(a), (b) (Vernon Supp. 2002). Subsection (b) was first
discussed substantively in Gordon v. State, where the Court of Criminal Appeals observed that
article 38.23(b), unlike the federal good-faith exception,


 requires a finding of probable cause. 
Gordon v. State, 801 S.W.2d 899, 912 (Tex. Crim. App. 1990). In Dunn v. State, the Court
applied subsection 38.23(b) to an arrest warrant that had not been signed by the magistrate at the
time it was served and held evidence obtained thereby to be admissible. Dunn v. State, 951
S.W.2d 478, 479 (Tex. Crim. App. 1997). The Court rejected Dunn’s assertion that the warrant
could not have been “issued,” as required for article 38.23(b) to apply, because it was not signed. 
Id. The magistrate had been presented with twenty pages of related affidavits and arrest warrants,
and he inadvertently failed to sign one of the warrants. Id. The mistake was not discovered until
after the arrest, at which time the signature was belatedly obtained. Id. Without further
explanation, the Court found “[t]he record establishes that appellant was arrested by officers acting
in objective good faith reliance upon a warrant based on probable cause and issued by a neutral
magistrate.” Id.
      On the good faith issue, we find this case much like Brent v. State, 916 S.W.2d 34, 37 (Tex.
App.—Houston [1st Dist.] 1995, pet. ref’d). In Brent, the First Court of Appeals held in an
appeal challenging denial of a suppression motion that subsection 38.23(b) allowed admission of
evidence seized under an arrest warrant rendered invalid because the affidavit supporting it was
not signed by the affiant.


 Apparently Brent did not challenge the officer’s good faith reliance on
the invalid warrant but suggested that the affidavit did not state probable cause. The court found
that the affidavit did state probable cause and overruled the challenge to the admissibility of
evidence seized when Brent was arrested. Id.
      Hunter does not suggest that Hicks’s unsigned affidavit does not state probable cause; rather,
she says that Hicks could not have acted in good faith reliance on a warrant that he knew was
based on an affidavit that he had not signed. That, however, calls for an analysis of the subjective
good faith of Officer Hicks, whereas the statute requires that we assess the objective good faith
of an officer in that situation. Tex. Code Crim. Proc. Ann. art. 38.23(b). We have reviewed
the unsigned affidavit and find that Judge Garrett could have determined that it presented probable
cause for issuance of the search warrant. Nothing in the record suggests that the law enforcement
officers executing the warrant did not act in “objective good faith reliance upon a warrant based
on probable cause issued by a neutral magistrate.” See Dunn, 951 S.W.2d at 478. Hicks testified
that he knew he should have signed the affidavit, that not signing it was merely an oversight which
he could not explain, and that he did not know he did not sign it until the day of the suppression
hearing. His testimony was not contradicted and there is no evidence that the other officers who
served the warrant knew of the absence of the signature. Following Brent, we find that article
38.23(b) allowed the evidence to be admitted against Hunter in spite of the invalidity of the search
warrant under which it was seized. Brent, 916 S.W.2d at 38.
Conclusion
      Although the search warrant was fatally defective, the evidence obtained when the officers
executed it is admissible under the good-faith exception found in article 38.23(b) of the Code of
Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.23(b). We overrule Hunter’s first
issue and proceed to her remaining issues.
FACTUAL SUFFICIENCY OF THE EVIDENCE
      Hunter’s fourth issue addresses the factual sufficiency of the evidence to sustain her
conviction. We have determined that the evidence is legally sufficient. See Santellan v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997) (We begin with the assumption that the evidence is
legally sufficient.). We now consider all of the evidence neutrally, not viewing it in the light most
favorable to the verdict. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997); Fulgium
v. State, 4 S.W.3d 107, 112 (Tex. App.—Waco 1999, pet. ref’d). We must also remain cognizant
of the factfinder’s role and unique position—one that the reviewing court is unable to occupy. 
Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The jury determines the credibility
of the witnesses and may “believe all, some, or none of the testimony.” Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects reasonably equal
competing theories of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).
      Our ultimate decision is guided by the Court of Criminal Appeals’ determination that the
evidence to support a criminal conviction may be factually insufficient in two distinct ways. Id.
at 285-86. In the first, "the evidence in support of the existence of a vital fact, considered as
standing alone, is factually too weak to support it." Id. at 285. In the second, the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof so as to be “clearly
wrong” or “manifestly unjust.” Id. at 285-86; Johnson, 23 S.W.3d at 11. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain, 958 S.W.2d at 410.
      Understanding again that Hunter’s attack is on the element of possession, we believe that our
discussion of the legal sufficiency of the evidence demonstrates that the evidence presented on that
element, when considered neutrally, supports the inference that the fact is true and is not too weak
by itself to support a rational finding. Goodman, 66 S.W.3d at 285. Neither do we
believe—because the determination ultimately rested on the credibility of the witnesses—that the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof so as to
be “clearly wrong” or “manifestly unjust.” Id. at 285-86; Chambers, 805 S.W.2d at 461.
      We overrule her fourth issue.
EFFECTIVE ASSISTANCE OF COUNSEL
      Hunter’s second issue is conditionally submitted. She asserts it only in the event we
determine that her motion to suppress evidence was not timely. The State does not contest the
timeliness of the motion and we have addressed it on the merits. Consequently, we do not address
her second issue.
CONCLUSION
      Finding that the evidence is legally and factually sufficient to sustain her conviction and that
the court did not err in failing to suppress the evidence seized under a defective search warrant,
we affirm the judgment.

                                                                   BILL VANCE
                                                                   Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Judgment affirmed
Opinion delivered and filed October 30, 2002
Publish
[CR25]