In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00222-CR


______________________________




MICHAEL DEWAYNE DAVIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 20474




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury convicted Michael Dewayne Davis of capital murder. See Tex. Penal Code Ann.
§ 19.03(a)(2) (Vernon Supp. 2006). The State did not seek the death penalty, so the trial court
sentenced Davis to a term of life imprisonment. See Tex. Penal Code Ann. § 12.31 (Vernon Supp.
2006). Davis raises four issues on appeal: (1) that his confession should not have been admitted at
trial as it was obtained after he invoked his right to terminate the interrogation; (2) that his
confession should not have been admitted at trial as it was obtained pursuant to his arrest under an
invalid arrest warrant; and (3) & (4) that the trial court denied his Confrontation Clause right by not
permitting him to cross-examine two police officers by employing leading questions. We find no
error in issues one and two, and error but no harm in issues three and four. 

(1) Interrogation After Invocation of Right to Terminate Interview

 Davis contends that the trial court erred in admitting a confession obtained after Davis had
invoked the right to terminate the interrogation. The court admitted the statement at trial after
denying Davis's pretrial motion to suppress. (1) Lieutenant Danny Huff, the lead investigator and
interviewing officer who obtained the confession, was the only witness at the suppression hearing. 

 Huff testified that Davis never stated that he did not want to talk to him. Davis's counsel
questioned Huff about the relevant portion of the interrogation at the suppression hearing: 

 Q. [by Davis's counsel] Now, at some point in time during this
statement, isn't it true that he says I don't want to talk or I don't want to talk to you or
I don't want to talk about that, something to that effect?


 A. [Lt. Huff] Yes and no. Not the way you're phrasing it, no, sir.


 Q. And I apologize. I don't know the exact words that he used but at
some point in time I think in the tape it shows that he indicates that in one form or
fashion there was something that he either was expressing to you that he did not want
to talk any further or that he did not want to talk about a particular topic. In fairness,
after that you go back to him and you say -- and you try to clear that up as to whether
or not, "are you saying that you don't want to talk at all or are you saying that you just
don't want to talk about that topic." Do you recall that?


 A. I'm not sure I got a question out of there, but that fairly summarizes
the issue.


 Q. And did you feel like that after he indicated to you that he didn't want
to talk, whichever way, either stop the interview or that he just didn't want to talk
about that topic, did you feel like that you had sufficiently cleared that up as to
whether or not he wanted to terminate the interview at that time?


 A. Yes, sir.

Though the State did not specifically ask about the part of the interrogation complained of on appeal,
the State generally asked Huff: 

 Q. [by the State] He never invoked his right to counsel, never told you
I don't want to talk to you any more?


 A. [Lt. Huff] No, sir.

 Additionally, the court had before it a videotaped copy of the interrogation. Though Davis's
counsel did not direct the trial court's or our attention to a specific point of the taped interrogation,
the complained-of portion apparently occurs approximately ten to eleven minutes into the video,
shortly after Davis signed an acknowledgment waiving his Miranda rights. See Miranda v. Arizona,
384 U.S. 436 (1966). The video shows (2) the following exchange:

 Davis: I really don't want to talk about it. I mean, I ain't the one that did it. 


 Huff: What do you mean you don't want to talk about it? 


 Davis: I mean, I was there but I was, I mean, ain't the one that did it.


 Huff: I understand that. But I, first all, have to clear up when you say don't want to
talk about it cause you've already told me a couple minutes ago that did want to talk
about it and it's okay for me to talk to you about it and ask you some questions. So
when you say, "I don't want to talk about it, I was there but I didn't do it," does that
mean you're done, you don't want to talk about it, or does that just mean that it's
really uncomfortable for you to talk about it and you really wish you didn't have to. 
You help me understand.


 Davis: I really wish I ain't [unintelligible], okay?


 Huff: Do you want to talk to me about this and try to get it worked out? Or do you
just want to take this [unintelligible] by yourself?


 Davis: I don't think about it, take it by myself, but I ain't, I mean I don't want to take
it by myself. I didn't do it. I mean, I was just there, I ain't, I can't kill the man.


 Huff: So do you want to talk to me about it? Is it okay if I keep asking you some
questions?

After a slight (less than one second) pause, during which, Huff asserted at trial, (3) Davis nodded his
assent, Huff said, "Okay" and continued the interrogation, ultimately obtaining Davis's signed
statement confessing to the crime. 

 (a) Standard of Review

 In reviewing a trial court's suppression hearing rulings, appellate courts should afford almost
total deference to the trial court's rulings on "application of law to fact questions" or "mixed
questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of
witnesses' credibility and demeanor. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). The appellate courts may review de novo "mixed questions of law and fact" not falling within
this category. Id. 

 (b) Right to Terminate Interview

 "If the individual indicates in any manner, at any time prior to or during questioning, that he
wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473-74; see also U.S.
Const. amend. V; Tex. Const. art. I, § 10. A suspect's exercise of his rights must be "fully
honored." Miranda, 384 U.S. at 467. The right to cut off questioning is among the procedural
safeguards that must be fully honored. Watson v. State, 762 S.W.2d 591, 596 (Tex. Crim. App.
1988). "A law enforcement officer may not continue to question the suspect until the officer
succeeds in persuading the suspect to change his mind and talk." Dowthitt v. State, 931 S.W.2d 244,
257 (Tex. Crim. App. 1996); see also Mayes v. State, 8 S.W.3d 354, 360 (Tex. App.--Amarillo
1999, no pet.).

 "There need not be a formal invocation of constitutional or Miranda rights. Anything said
or done by the defendant that could reasonably be interpreted as a desire to invoke these rights
should be sufficient to halt questioning." Watson, 762 S.W.2d at 598. "If a statement is governed
by Miranda (i.e. the suspect is in custody), then a failure to cut off questioning after a suspect
invokes his right to remain silent violates his rights and renders any subsequently obtained
statements inadmissible." Dowthitt, 931 S.W.2d at 257. "But, an officer need not stop his
questioning unless the suspect's invocation of rights is unambiguous, and the officer is not required
to clarify ambiguous remarks." Id. The suspect's comments must "clearly manifest his desire to
remain silent." Mayes, 8 S.W.3d at 358. The totality of circumstances surrounding the interrogation
and alleged invocation must illustrate that the suspect actually invoked his right. See Dinkins v.
State, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). 

 The totality of circumstances surrounding the interrogation and Davis's alleged invocation
of his right indicate that Davis never unambiguously invoked his rights to remain silent or terminate
the interrogation. Davis's counsel all but conceded at the suppression hearing that Davis's initial
"invocation" was ambiguous--i.e., that Davis "either was expressing to you that he did not want to
talk any further or that he did not want to talk about a particular topic." (Emphasis added.) 
Moreover, Davis then immediately followed his assertion, "I really don't want to talk about it," with
the statement, "I mean, I ain't the one that did it." Davis reinitiated any interrogation with his
immediate denial of wrongdoing made less than a second after the alleged invocation of his right to
terminate. By following an ambiguous invocation of his right to silence or to terminate the interview
"with more speech, separated by little more than a breath, it is clear [he] resolved [his] dilemma; in
short, [he] wanted to talk. Thus, we do not find this initial comment of appellant to be an
unambiguous assertion of the right to remain silent." Mayes, 8 S.W.3d at 359; see also Minjarez v.
State, No. AP-74592, 2005 WL 3061981, at *9 (Tex. Crim. App. Nov. 16, 2005) (not designated for
publication). 

 Moreover, after Davis's initial comment, Davis never subsequently and unambiguously
invoked his rights. Huff, who did not need to clarify the ambiguous invocation of the right, see
Dowthitt, 931 S.W.2d at 257, nevertheless admirably attempted--not once, but four times--to more
definitely ascertain Davis's position. In response to Huff's questions, Davis never unambiguously
invoked his rights; rather, he continued to deny wrongdoing. To the extent that the parties dispute
that Davis made a nonverbal assent to continued questioning in response to Huff's last question, we
defer to the trial court's conclusion, see State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App.
2000), that Davis waived his rights, including any implied findings that support the trial court's
ruling. See State v. Kelly, 204 S.W.3d 808, 818-819 (Tex. Crim. App. 2006). (4) 

 We find that the trial court did not err in finding that Davis had waived his rights. Davis
never unambiguously invoked his right to remain silent or terminate the interrogation. Thus, the
voluntary statement he gave was a product of a constitutional custodial interrogation. Davis's first
point of error is overruled.

(2) Validity of Arrest Warrant

 Davis's second point of error is that his custodial statements should have been excluded as
the fruits of his arrest pursuant to an invalid arrest warrant. Davis asserts that the arrest warrant is
invalid since it was based on a complaint which, though itself signed and sworn, incorporated a
signed but unsworn statement. His objection to the arrest warrant was addressed at the suppression
hearing. The trial court overruled the objection and filed a conclusion of law that Davis was arrested
pursuant to a valid warrant.

 We review a trial court's decision to grant or deny a motion to suppress under a bifurcated
standard of review; we give almost total deference to the trial court's determination of historical
facts, but review de novo the court's application of the law of search and seizure. Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). 

 A magistrate may issue a warrant of arrest "[w]hen any person shall make oath before the
magistrate that another has committed some offense against the laws of the State." Tex. Code Crim.
Proc. Ann. art. 15.03(a)(2) (Vernon 2005). The affidavit, or complaint, so made before the
magistrate issuing the warrant:

 shall be sufficient, without regard to form, if it have these substantial requisites:

 1. It must state the name of the accused, if known . . . .

 2. It must show that the accused has committed some offense against the
laws of the State, either directly or that the affiant has good reason to believe, and
does believe, that the accused has committed such offense.

 3. It must state the time and place of the commission of the offense . . . .

 4. It must be signed by the affiant by writing his name or affixing his
mark.


Tex. Code Crim. Proc. Ann. art. 15.05 (Vernon 2005). 

 Although the statute does not expressly require the complaint supporting an arrest warrant
to be sworn, it does require the "affiant" to sign, by writing his name or mark. See Tex. Code Crim.
Proc. Ann. art. 15.05(4); cf. Tex. Code Crim. Proc. Ann. art. 18.01(b) (Vernon 2005) (affidavit
for search warrant must be sworn, but no statutory signature requirement). While the statute does
not define "affiant," we find that it follows the common meaning. Black's Law Dictionary defines
an "affiant" by the second definition of "complainant," i.e., "a person who, under oath, signs a
statement (called a 'complaint') establishing reasonable grounds to believe that some named person
has committed a crime." Black's Law Dictionary 62, 302-03 (8th ed. 2004) (emphasis added). 
Thus, unlike the requirements for a search warrant, a complaint supporting an arrest warrant must
be both signed and sworn. Cf. Smith v. State, 207 S.W.3d 787, 794 (Tex. Crim. App. 2006) (search
warrant affidavit requires oath, not necessarily signature).

 The magistrate issued the warrant for Davis's arrest on the basis of a half-page signed and
sworn complaint by Huff. In its entirety, Huff's signed and sworn complaint states:

 In the name and by the authority of the State of Texas, personally appeared before me
the undersigned authority DANNY HUFF who after being duly sworn, on oath
deposes and says that he has reason to believe and does believe that heretofore on or
about the 8th day of January A.D., Two-Thousand and Four in Lamar County and
State of Texas, one MICHAEL DEWAYNE DAVIS A/K/A TRACY DAVIS late of
said County and State, anterior to the filing of this complaint, did then and there,
intentionally or knowingly cause the death of an individual, namely, Marvin Davis,
by beating and strangling him, and the defendant was then and there in the course of
committing or attempting to commit the offense of Aggravated Robbery of Marvin
Davis[.]

 See Exhibit "A" attached hereto and incorporated herewith for all purposes. 


Huff's signature is under these paragraphs, and under his signature is the magistrate's jurat. 
Exhibit A is a four-page attachment to the complaint setting forth Huff's probable cause. Huff
initialed the bottom of each page of Exhibit A and signed the final page as "Affiant," though the
exhibit contains no independent indication of having been sworn. Testimony at the suppression
hearing indicates Exhibit A was attached to the complaint at the time Huff applied to the magistrate
for the warrant. 

 Davis asks us to apply the rationale of Brent v. State, 916 S.W.2d 34 (Tex. App.--Houston
[1st Dist.] 1995, pet. ref'd), and hold that an unsworn incorporated statement to a sworn complaint
does not satisfy the requirements of Article 15.05 of the Texas Code of Criminal Procedure. (5) In
Brent, our sister court held that a sworn but unsigned arrest warrant was invalid for failure to comply
with Article 15.05's requirement that a complaint for an arrest warrant "be signed by the affiant by
writing his name or affixing his mark." See Brent, 916 S.W.2d at 37; see also Tex. Code Crim.
Proc. Ann. art. 15.05. Davis does not explain how or why Brent should apply to incorporated
exhibits to a complaint. We find that the Brent rationale does not apply here. Huff did both sign and
swear to the complaint for Davis's arrest. As the complaint is itself an affidavit, see Tex. Code
Crim. Proc. Ann. art. 15.04 (Vernon 2005), Huff did comply with the signing and swearing
technical requirements of Article 15.05.

 We find that, rather than Brent, the case of Barnes v. State, 876 S.W.2d 316 (Tex. Crim. App.
1994), presents a situation more like that presented by the facts of this case. Although Barnes
assessed the validity of a search warrant, and not an arrest warrant, the validity of the warrant
depended on information contained in attached appendices to the affidavit. Id. at 327. The
appendices were neither signed nor sworn, and the affidavit did not incorporate them by reference. 
Id. At the suppression hearing, testimony suggested that the magistrate, who had made physical
changes to the appendices, considered the appendices to be "part and parcel" and a continuation of
the affidavit. Id. The court stated that "it is apparent that the magistrate considered the affiant's oath
to extend not only to matters contained on the face of the affidavit page, but also to the information
contained in the attached appendices." Id. at 327-28. The court ultimately held that, because the
oath could be extended to the appendices, the appendices were implicitly incorporated within the
affidavit and the warrant was therefore valid. Id. at 328.

 The implication in Barnes is that an explicitly incorporated appendix to a signed and sworn
affidavit is also a valid extension of the affidavit. See id. at 327. Indeed, Barnes has subsequently
been cited for the proposition that, in a probable cause analysis, "[n]ormally, in order for attachments
to an affidavit to be considered part of the affidavit, they must be incorporated by reference." See
Boley v. State, 16 S.W.3d 95, 98 (Tex. App.--Houston [1st Dist.] 2000, no pet.). Here, the signed
and sworn complaint explicitly incorporated Exhibit A. The exhibit was both initialed and signed
by the same person signing and swearing to the complaint. The affiant presented the exhibit to the
magistrate with the complaint. Given the facts presented, we find that it is more logical that Huff's
oath on the complaint extends to the attached and expressly incorporated exhibit than for the
unsworn exhibit to render the sworn complaint invalid. We find the affidavit met all the statutory
requirements (6) and is valid, despite the attached signed but unsworn statement.

 Davis's second point of error is overruled.

(3) Leading Questions

 In Davis's third point of error, he asserts that the trial court "denied the Appellant his
Confrontation Clause right by not permitting him to cross-examine [Huff] by leading questions."
Davis's fourth point of error is the same, but concerns the trial court's denial of Davis's use of leading
questions while examining Officer J. D. Simmons. 

 (a) Texas Rule of Evidence 611

 Texas Rule of Evidence 611 provides for the court's "reasonable control over the mode and
order of interrogating witnesses and presenting evidence." Tex. R. Evid. 611(a). We review the trial
court's decision to control the order and presentation at trial for abuse of discretion. See Wyatt v.
State, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000); Love v. State, 861 S.W.2d 899, 903 (Tex. Crim.
App. 1993). The test for abuse of discretion is whether the court acted without reference to any
guiding rules or principles. State v. Herndon, No. PD-1954-03, 2007 Tex. Crim. App. LEXIS 228
(Tex. Crim. App. Feb. 28, 2007). Rule 611(c) states:

 Leading questions should not be used on the direct examination of a witness except
as may be necessary to develop the testimony of the witness. Ordinarily leading
questions should be permitted on cross-examination. When a party calls a hostile
witness, an adverse party, or a witness identified with an adverse party, interrogation
may be by leading questions.

Tex. R. Evid. 611(c). The permissive and conditional language in the rule (i.e., "ordinarily,"
"should," and "may" as opposed to "must") is not an invitation for the court to allow or disallow
leading questions without reference to guiding rules and principles. Rather, this language reflects
the long understood truth that not every witness called on direct examination is friendly and so
susceptible to the suggestiveness of leading questions, and not every witness on cross-examination
is hostile and so immune to the possible suggestiveness of leading questions. See 3 John Henry
Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common
Law §§ 769, 773, 774 (3d ed. 1940); see also 1 Steven Goode et al., Texas Practice: Guide
to the Texas Rules of Evidence § 611.4 (3d ed. 2002) (hereafter "Goode"). It is well settled that
counsel may ask leading questions of those categories of witnesses recognized in the statute--e.g.,
incompetent, hostile or adverse witnesses--regardless of whether that witness is examined on direct
examination or on cross-examination. See, e.g., Hernandez v. State, 643 S.W.2d 397, 400 (Tex.
Crim. App. 1982).

 (b) Examining Lieutenant Huff

 After the State passed Huff, the following exchange occurred:

 THE COURT: [defense counsel] . . . are you ready to cross examine?


 [Defense counsel]: Well, we will reserve our cross until the defendant's case.


 THE COURT: Very well. You're not going to reserve cross, however. You
reserve to call him back as your witness.


 [Defense counsel]: That will be fine.


Davis called Huff as a witness in the presentation of his case, and in the course of Davis's attempts
to lead the witness so as to impeach him, the court sustained numerous leading question objections
from the State. When Davis's counsel requested to ask leading questions of Huff as a hostile and
adverse witness, the court denied the request, saying: 

 You could have done that had you taken him on cross examination at the time. You
however have called him back as your witness, knowing the condition of the witness,
so you're going to be held to the witness rule. He's your witness and what he says is
binding on you in direct testimony, and the state will be permitted to cross
examination. 

Davis asserted that leading the witness was needed to confront and impeach him, and requested a
running objection to the court's ruling, which the court denied. 

 The State asserts the statement "[t]hat will be fine" in response to the court's decision to deny
Davis's cross-examination of Huff served as Davis's waiver of not only the right to cross-examine
Huff but also, apparently, any right to ask leading questions of Huff as Davis's own, but hostile,
witness. We do not decide whether Davis waived the right to cross-examine Huff, since Davis does
not raise the denial of his general right of cross-examination on appeal. (7) However, we disagree that
a waiver of the right of cross-examination, if valid, necessarily includes the waiver of the right to ask
leading questions of a hostile or adverse witness. 

 Although cross-examination is commonly equated with leading questions that probe
the substance of the witness' direct testimony and attack his credibility, these three
concepts--cross-examination, leading questions, and impeachment--are analytically
distinct. Cross-examination is simply a stage in the interrogation of a witness. 
Whether a question is leading depends on its form. Impeachment refers to the
attempt to attack a witness' credibility. Impeachment usually occurs during cross-examination, but is permitted during direct examination. While efforts to impeach
a witness ordinarily involve the use of leading questions, non-leading questions may
also be employed. And, although leading questions typically are used during cross-examination, non-leading questions may, and sometimes must, be used.


1 Goode, § 611.4 (footnote omitted). We find that Davis did not waive the ability to ask leading
questions of Huff as a hostile or adverse (or identified with an adverse party) witness on "direct"
examination.

 The State also asserts that Davis failed to provide an offer of proof that Huff was actually
hostile. We do not believe an explicit showing was necessary. A witness "who is closely identified
with the prosecution, such as a police officer, should be presumed hostile." 2 Barbara E.
Bergman & Nancy Hollander, Wharton's Criminal Evidence § 8:23 (15th ed. 1998). Huff
was called by the State to establish its case-in-chief as the State's lead investigator: he served as the
evidence custodian at the scene of the crime through whom the State admitted most of the physical
evidence; obtained the warrants; arrested Davis; assisted in the collection of Davis's blood for DNA
testing; and interrogated Davis and obtained his confession. We think it apparent from the record
that Huff is identified with the State and is hostile to Davis.

 The trial court appears to have denied Davis the right to ask leading questions of Huff solely
on the basis of two mistaken views of the law: (1) that Davis was not entitled to ask leading
questions of witnesses he himself called to the stand, whether hostile or not, whether identified with
the State or not; and (2) that an unidentified "witness rule" binds Davis to his witness's statements. 
These are incorrect understandings of the law (see discussion above). See Chambers v. Mississippi,
410 U.S. 284, 295 (1973) (finding antiquated "voucher rule" for adverse witnesses in criminal trials
unconstitutional); see also Tex. R. Evid. 607. Even after Davis's counsel cited caselaw and the rule
to the court, the court persisted in its ruling. We find that the court committed error by acting
without reference to guiding principles in denying Davis the right to ask leading questions of Huff. 

 We must now determine if the error is reversible error. See Tex. R. App. P. 44.2. Davis
asserts that denying the use of leading questions is constitutional error since it is an improper limit
on the right to confrontation by denying effective cross-examination, or, alternatively, effective direct
examination of a hostile witness. Without deciding that the denial of a particular mode of
interrogation--rather than the exclusion of particular evidence or preclusion of certain subjects of
questioning--constitutes constitutional error, (8) we find that, even under that more defense-friendly
standard of review, compare Tex. R. App. P. 44.2(a) with Tex. R. App. P. 44.2(b), Davis has failed
to show harm.

 The harmless constitutional error analysis requires us to determine whether the error made
no contribution to the conviction or the punishment. See Shelby v. State, 819 S.W.2d 544, 550 (Tex.
Crim. App. 1991). The procedure to be followed in reviewing an improper exclusion Confrontation
Clause violation is a three-pronged analysis: (1) assume that the damaging potential of the
cross-examination was fully realized; (2) with that assumption in mind, review the error in
connection with the following factors: (a) the importance of the witness's testimony in the
prosecution's case; (b) whether the testimony was cumulative; (c) the presence or absence of
evidence corroborating or contradicting the testimony of the witness on material points; (d) the
extent of cross-examination otherwise permitted; and (e) the overall strength of the prosecution's
case; finally, in light of the first two prongs, (3) determine if the error was harmless beyond a
reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Shelby, 819 S.W.2d at 547. 

 Assuming the damaging potential of Davis's use of leading questions was fully realized, we
note that, although Huff was essential to the State's case, and all the precluded questions went to
attacks on Huff's credibility, or the credibility of others upon whom Huff relied in his investigation,
Davis has failed to show how any particular subject matter of questioning was denied him through
other means of examination. Moreover, we note the strength of the State's case, even with the
damaging potential of the use of leading questions to Huff: a glove was found at the crime scene
with the victim's blood on the outside and Davis's DNA on the inside; Davis's friend testified that
he dropped Davis off near the victim's trailer on the day of the murder; Davis was seen by a witness
leaving the area of the victim's trailer; a witness testified that Davis gave him the victim's wallet in
exchange for drugs; and Davis confessed to the murder during the course of a robbery in a signed
statement after a videotaped interview. We find the error harmless beyond a reasonable doubt. 

 As the denial of leading questions was harmless error, Davis's third point of error is
overruled.

 (c) Examining Officer Simmons

 The trial court also denied Davis the use of leading questions during his cross-examination
of Officer Simmons. Although the State generally asserts Davis's waiver of error for the questioning
of both Huff and Simmons, the State does not direct us to, and we are not aware of, any part of the
record indicating Davis's waiver of any right of cross-examination, or any incidents to that right, as
pertains to Simmons. We find the court erred in denying Davis the use of leading questions in the
cross-examination of Simmons on recall to the stand. See Tex. R. Evid. 611(c); Craig, 594 S.W.2d
at 95. 

 We again must determine if the error is reversible. See Tex. R. App. P. 44.2. We follow the
same three-pronged analysis set out above. See Van Arsdall, 475 U.S. at 684; Shelby, 819 S.W.2d
at 547. We note the analysis is the same as above, except that Simmons, though an important State
witness, was not as central to the State's case as Huff. For the reasons given above, we find the error
harmless. Davis's fourth point of error is overruled.

 For the reasons herein, we affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: October 31, 2006

Date Decided: March 23, 2007


Do Not Publish

1. At the suppression hearing, Davis attacked the admissibility of the confession on several
fronts, including (1) that the custodial interrogation was premised on an arrest pursuant to an arrest
warrant supported by an unsworn affidavit, see discussion below; (2) that the interview did not cease
when Davis indicated a desire to terminate the interview, see discussion this section; (3) that Davis
did later terminate the interview because he was too tired to continue and the interview was
improperly resumed; (4) that the warrant contained no information corroborating the reliability and
credibility of the source implicating Davis; (5) that the Miranda warnings did not comply with
statutory requirements; (6) that Davis's statement was involuntary since Davis was arrested around
3:00 p.m., interrogated for several hours despite protestations of being tired, and finally signed a
written statement after 1:00 a.m.; and (7) that there was no showing that Davis could either read or
write. The trial court issued findings of fact and conclusions of law primarily addressing the
circumstances surrounding issues three through seven above. On appeal, Davis addresses only the
first two of the above issues. 
2. We do not have an official reporter's transcription of the videotape to review, and some of
Huff's questions and several of Davis's responses are mumbled or otherwise unintelligible. The
transcription here is approximate.
3. Davis cites to this Court an extensive excerpt from the trial examination of Huff concerning
Davis's alleged assent at this point in the interrogation. While Huff's trial testimony provides an
interesting insight into Huff's perspective on the interrogation, it is not relevant to our determination
of the question at hand--i.e., whether the trial court erred in admitting the statement into evidence. 
The inquiry on the trial court's ruling on the motion to suppress is limited to review of the record as
it existed at the time of the suppression hearing, not as later developed at trial. See O'Hara v. State,
27 S.W.3d 548, 551 (Tex. Crim. App. 2000). 
4. Davis asserts that we should review de novo the fact of whether Davis nodded his assent
since the interrogation was videotaped and audiotaped and the taped material is concrete. We
disagree. Given the particular video presented--very grainy and poorly lit--whether Davis nodded
presents a question of fact, which is brought further into focus by the very fact of the parties' dispute
over the nod. We note that the trial court had before it the live testimony of Huff and was in a better
position to consider his credibility and demeanor in his determination that he had obtained Davis's
assent to continue.
5. Davis does not address the validity of the signed and sworn complaint in the absence of the
attachment--i.e., that the four corners of the half-page complaint do or do not provide probable
cause for the magistrate's issuance of the arrest warrant. Davis apparently seeks for us to find the
entire warrant invalid, not for the lack of probable cause in the absence of the attachment, but due
solely to the existence of the unsworn attachment.
6. We again note that we have not been asked to determine whether the warrant was supported
by probable cause, and this opinion does not decide that question.
7. A court is "clearly in error in refusing to permit the appellant from recalling [the State's
officer witness] for further cross-examination. . . . A defendant does not lose his right to recall a
State's witness for cross-examination merely because he does not exercise the right of cross-examination immediately after direct examination by the State." Craig v. State, 594 S.W.2d 91, 95
(Tex. Crim. App. [Panel Op.] 1980).
8. Davis presents no authority for this proposition. We noted the difference between the asking
of leading questions and the right of cross-examination or impeachment above. Nonetheless, we are
aware that "attempts to probe the accuracy of the witness' story may be unavailing if the cross-examiner is deprived of the use of leading questions." 1 Goode, § 611.4
.