**Kathleen Diane HUNTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–01–407–CR.**

Court of Appeals of Texas,
Waco.

Nov. 13, 2002.

Discretionary Review Refused
March 5, 2003.

Andy J. McMullen, Hamilton, for appellant.

B.J. Shepherd, Hamilton County Dist. Atty., Martin L. Peterson, Assistant Dist. Atty., Meridian, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Kathleen Diane Hunter appeals from her conviction for possession of methamphetamine. Hunter presents four issues: (1) whether an unsigned affidavit is sufficient to obtain a search warrant; (2) if her motion to suppress was untimely, did she receive ineffective assistance of counsel; and whether the evidence is (3) legally and (4) factually sufficient to sustain the conviction. Finding the search warrant invalid but the evidence seized as a result nevertheless admissible, and further finding the evidence to be legally and factually sufficient to support the conviction, we will affirm the judgment.

## BACKGROUND

On January 4, 2001, Noland Hicks, a sergeant investigator of the Rural Area Narcotics Task Force (RANTF), met with a confidential informant who claimed that Harold Hugh Hart and Kathleen Diane Hunter possessed methamphetamine in their Hamilton County home. At approximately 9:00 p.m. that day, he presented an affidavit to Charles Garrett, the county judge of Hamilton County, to obtain a search warrant for the residence. Although Hicks was named as the affiant in the supporting affidavit, he failed to sign it. He testified that he "swore" to the contents of the affidavit before Judge Garrett, who signed the search warrant. Less than an hour later, Hicks and other members of the Task Force executed the warrant.

Hunter was alone when the officers entered the home. According to Hicks, "she had lots of tracks or needle marks on her hands and arms." Hicks also testified that Hunter "was always" at the home and that she kept "clothing and stuff there." While some officers searched the home for contraband, Officer Cody Lee remained in the kitchen logging every item seized in order to maintain an accurate inventory. As a result of the search, twelve items were found which might have methamphetamine. They were:

- a flashlight with plastic bag and tissue containing some sort of residue;
- a teddy bear with a plastic bag inside it;
- another teddy bear with a red balloon inside it;
- a cigarette box containing one hand-rolled cigarette;
- a spoon with a residue substance on it;
- a box containing syringes;
- a leather case with a baggy inside it;
- a clear baggy;
- a plastic baggy containing wet coffee filters;
- a black plastic tube with wet coffee filters inside that had a white powder residue;
- a plastic container with wet coffee filters inside that also had a white powder residue; and
- a flashlight containing syringes and lithium strips.

Araceli Uptmor, a drug analyst for the Department of Public Safety, tested the items to determine the presence and amount of methamphetamine, if any. Uptmor's analysis revealed approximately 0.06 grams of methamphetamine and adulterants.

Hunter was indicted for possession of less than one gram of methamphetamine. After she filed a motion to suppress the evidence, which was denied, she pled "not guilty." A jury convicted her of the offense and assessed punishment at two years' confinement in a state jail facility. She then brought this appeal.

## LEGAL SUFFICIENCY OF THE EVIDENCE

■ Hunter's third issue asserts that the evidence is legally insufficient to sustain her conviction because mere presence where drugs are located is not sufficient to establish "possession." *Davis v. State*, 74 S.W.3d 90, 96 (Tex.App.-Waco 2002, no pet.). We address this issue before her other issues because under it she is entitled to an acquittal if she is correct. *See Edmonson v. State*, 951 S.W.2d 6, 6 (Tex. Crim.App.1997) (per curiam). Furthermore, the admissibility of evidence seized under the search warrant does not affect this issue because evidence erroneously admitted at trial is considered in determining sufficiency of the evidence in criminal cases. *See Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Crim.App.1986) (all of the evidence, both proper and improper, must be considered in deciding the issue).

■ In assessing the legal sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the prosecution and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Holberg v. State*, 38 S.W.3d 137, 139 (Tex.Crim.App.2000). We are in the position of a final, due process safeguard, ensuring only the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ An illegal drug can be jointly possessed with others. *Davis*, 74 S.W.3d at 96 (citing *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988)). Mere presence at the scene does not prove possession; there must be evidence "affirmatively linking" the accused to the contraband which shows the accused had knowledge of and control over the contraband. *Id.*

■ "Affirmative links" is a shorthand expression to identify what must be proven in a prosecution for the possession of illegal drugs. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995). An accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of her connection with it and have known what it was. Evidence which affirmatively links her to it suffices for proof that she possessed it knowingly. *Id.* This evidence may be direct or circumstantial. *Id.* In either case it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id.* This is the whole of the so-called "affirmative links" rule. *Id.* It is still, just as it always was, only a shorthand expression of what must be proven to establish that a person possessed some kind of drug "knowingly or intentionally." *Id.*

The evidence shows that Hunter had been living in the residence with Hart, Hart stored drugs at the residence and used it as a distribution point, and he had given Hunter drugs for her personal use. Some drugs, which Hart denied knowing about, were located in a kitchen cabinet. Hunter admitted that she knew drugs had been periodically stored in the house, but denied knowing that the drugs found in the search on the day of her arrest were there. She also said she had looked for drugs and failed to find any. From this evidence, we conclude that a rational jury could have found that Hunter knowingly possessed the drugs in question. *Holberg*, 38 S.W.3d at 139. We overrule issue three.

## SUPPRESSION OF EVIDENCE

■ The validity of the search warrant is the basis for Hunter's first issue. She

filed a motion to suppress the evidence obtained thereby, alleging that the warrant was invalid because the supporting affidavit was not signed by Officer Hicks as "required by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, Article I, Section 9 of the Constitution of the State of Texas, and Chapter 18 of the Texas Code of Criminal Procedure."

## Validity of the Search Warrant

In 1988, a panel of the San Antonio court of appeals addressed this issue. *Vance v. State,* 759 S.W.2d 498, 500 (Tex. App.-San Antonio 1988, pet. ref'd). The majority held that the magistrate's reliance on an unsigned affidavit to issue a search warrant did not violate the Texas Constitution's requirement that no warrant shall issue without probable cause supported by oath or affirmation, because the affiant had sworn to the magistrate that the contents of the affidavit were true. *Id.* We disagree with that conclusion.

 Article I, Section 9 of the Texas Constitution reads:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue *without describing them as near as may be, nor without probable cause, supported by oath or affirmation.*

TEX. CONST. art. I, § 9 (emphasis added). According to this provision of the Texas Constitution, a search warrant can be issued only if (1) the things to be seized are described "as near as may be," (2) there is "probable cause" to believe that the things to be found are present at the location, and (3) the facts in both (1) and (2) are "supported by oath or affirmation." *Id.*

The Code of Criminal Procedure provides:

No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. *A sworn affidavit* setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested. The *affidavit* is public information if executed, and the magistrate's clerk shall make a copy of the affidavit available for public inspection in the clerk's office during normal business hours.

TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp.2002) (emphasis added). In light of article 18.01(b) of the Code of Criminal Procedure, the three constitutional requirements must be provided to the magistrate in the form of a "sworn affidavit." *Id.*

We begin our analysis with an interpretation of the word "affidavit" as it is used in article 18.01(b). Article 3.01 of the Code of Criminal Procedure states that "[a]ll words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined." *Id.* art. 3.01 (Vernon 1977). Article 18.01, however, does not provide a definition of the word.[1] Also, the Court of Criminal Appeals has stated that when an appellate court must interpret a statute, "we ordinarily give effect to [the] plain meaning" of the statutory text. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Accordingly, we will "give effect to [the] plain meaning" of the word "affidavit," that is, how the word is "taken and understood in [its] usual acceptation in common lan-

---

1. There is also no definition of the word "affi- davit" in the Penal Code.

guage." *Id.;* TEX.CODE CRIM. PROC. ANN. art. 3.01.

The *Boykin* Court looked to a legal dictionary to ascertain the plain meaning of the statutory term to be interpreted in that case. *Boykin,* 818 S.W.2d at 786. We follow the Court's lead and find that, according to BLACK'S LAW DICTIONARY, an "affidavit" is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." BLACK'S LAW DICTIONARY 58 (7th ed.1999). Moreover, WEBSTER'S INTERNATIONAL DICTIONARY provides a similar definition and adds: "An affidavit must sufficiently identify the person who makes it, usually by his subscribed signature." WEBSTER'S INTERNATIONAL DICTIONARY 43 (2d ed.1948). Accordingly, the plain meaning of the term "affidavit" is that the affiant's statement is in writing, sworn to, and signed by him.

Hunter also points to a section in the Government Code, which pertains to the construction of civil statutes and which defines an "affidavit" to be "a statement in writing of a fact or facts *signed by the party making it,* sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX. GOV'T CODE ANN. § 312.011(1) (Vernon 1998) (emphasis added). We recently applied the definition of "affidavit" from the Government Code to a criminal case, and because the Code of Criminal Procedure does not provide a contrary definition, we once again rely on the Government Code's definition of that word for guidance. *See Scott v. State,* 80 S.W.3d 184, 190 (Tex.App.-Waco 2002, pet. filed). Section 312.011(1) states that the party making the affidavit must sign it. TEX. GOV'T CODE ANN. § 312.011(1).

Finally, under other decisions interpreting statutes in civil cases, an affidavit not signed by the affiant is void. *See, e.g., De*

*Los Santos v. S.W. Texas Meth. Hosp.,* 802 S.W.2d 749, 755 (Tex.App.-San Antonio 1990, no writ) (the lack of a properly notarized signature is a substantive rather than formal defect in an affidavit); *see Davis v. Sherrill,* 52 Tex.Civ.App. 259, 113 S.W. 556, 557 (Tex.Civ.App.-Dallas 1908, no writ) (an affidavit not signed by affiant is void).

■ Thus, we conclude that the term "sworn affidavit" used in article 18.01(b) of the Code of Criminal Procedure requires a writing signed by the affiant, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office. TEX.CODE CRIM. PROC. ANN. art. 18.01(b); TEX. GOV'T CODE ANN. § 312.011(1). Although the State argues that Hicks's oversight is negligible, we find that a search warrant issued on an unsigned affidavit has not been issued in accordance with the "sworn-affidavit" requirement of article 18.01(b). *See Gonzales v. State,* 577 S.W.2d 226, 231 (Tex.Crim.App.1979) ("One signature under oath is sufficient to comply with the requirement that the affidavit be sworn to before the magistrate."). Therefore, the evidence seized by virtue of the invalid warrant was subject to suppression under article 38.23(a) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002).

### Good Faith Exception to Article 38.23(a)

■ But the State urges the application of article 38.23(b), the "good-faith" exception to article 38.23(a). Article 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

. . .

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

Tex.Code Crim. Proc. Ann. art. 38.23(a), (b) (Vernon Supp.2002). Subsection (b) was first discussed substantively in *Gordon v. State*, where the Court of Criminal Appeals observed that article 38.23(b), unlike the federal good-faith exception,[2] requires a finding of probable cause. *Gordon v. State*, 801 S.W.2d 899, 912 (Tex.Crim.App. 1990). In *Dunn v. State*, the Court applied subsection 38.23(b) to an arrest warrant that had not been signed by the magistrate at the time it was served and held evidence obtained thereby to be admissible. *Dunn v. State*, 951 S.W.2d 478, 479 (Tex.Crim.App.1997). The Court rejected Dunn's assertion that the warrant could not have been "issued," as required for article 38.23(b) to apply, because it was not signed. *Id.* The magistrate had been presented with twenty pages of related affidavits and arrest warrants, and he inadvertently failed to sign one of the warrants. *Id.* The mistake was not discovered until after the arrest, at which time the signature was belatedly obtained. *Id.* Without further explanation, the Court found "[t]he record establishes that appellant was arrested by officers acting in objective good faith reliance upon a warrant based on probable cause and issued by a neutral magistrate." *Id.*

On the good faith issue, we find this case much like *Brent v. State*, 916 S.W.2d 34, 37 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). In *Brent*, the First Court of Appeals held in an appeal challenging denial of a suppression motion that subsection 38.23(b) allowed admission of evidence seized under an arrest warrant rendered invalid because the affidavit supporting it was not signed by the affiant.[3] Apparently Brent did not challenge the officer's good faith reliance on the invalid warrant but suggested that the affidavit did not state probable cause. The court found that the affidavit did state probable cause and overruled the challenge to the admissibility of evidence seized when Brent was arrested. *Id.*

Hunter does not suggest that Hicks's unsigned affidavit does not state probable cause; rather, she says that Hicks could not have acted in good faith reliance on a warrant that he knew was based on an affidavit that he had not signed. That, however, calls for an analysis of the *subjective* good faith of Officer Hicks, whereas the statute requires that we assess the *objective* good faith of an officer in that situation. Tex.Code Crim. Proc. Ann. art. 38.23(b). We have reviewed the unsigned affidavit and find that Judge Garrett could have determined that it presented probable cause for issuance of the search warrant. Nothing in the record suggests that the law enforcement officers executing the warrant did not act in "objective good faith reliance upon a warrant based on probable cause issued by a neutral magistrate." *See Dunn*, 951 S.W.2d at 478. Hicks testi-

---

**2.** Referring to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**3.** The court noted that article 15.05(4) of the Code of Criminal Procedure provides that the complaint in support of an arrest warrant "must be signed by the affiant by writing his name or affixing his mark." Tex.Code Crim.

Proc. Ann. art. 15.05(4) (Vernon 1977). The court also observed that article 18.01(b) "allows room for a verbal, as well as a written, oath." *Brent v. State*, 916 S.W.2d 34, 37 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). We have disagreed with that observation earlier in this opinion.

fied that he knew he should have signed the affidavit, that not signing it was merely an oversight which he could not explain, and that he did not know he did not sign it until the day of the suppression hearing. His testimony was not contradicted and there is no evidence that the other officers who served the warrant knew of the absence of the signature. Following *Brent,* we find that article 38.23(b) allowed the evidence to be admitted against Hunter in spite of the invalidity of the search warrant under which it was seized. *Brent,* 916 S.W.2d at 38.

## Conclusion

Although the search warrant was fatally defective, the evidence obtained when the officers executed it is admissible under the good-faith exception found in article 38.23(b) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 38.23(b). We overrule Hunter's first issue and proceed to her remaining issues.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

 Hunter's fourth issue addresses the factual sufficiency of the evidence to sustain her conviction. In reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption that the evidence is legally sufficient. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.

Crim.App.2000); *see also Goodman v. State,* 66 S.W.3d 283, 285 (Tex.Crim.App. 2001).

 We must also remain cognizant of the factfinder's role and unique position—one that the reviewing court is unable to occupy. *Johnson,* 23 S.W.3d at 9. The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman,* 66 S.W.3d at 287. A decision is not manifestly unjust as to the accused merely because the factfinder resolved conflicting views of evidence in favor of the State. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App.1997).

Understanding again that Hunter's attack is on the element of possession, we believe that our discussion of the legal sufficiency of the evidence demonstrates that the evidence presented on that element, when considered neutrally, supports the inference that the fact is true and is not too weak by itself to support a rational finding. *Goodman,* 66 S.W.3d at 285. Neither do we believe—because the determination ultimately rested on the credibility of the witnesses—that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof so as to be "clearly wrong" or "manifestly unjust." *Id.* at 285–86; *Chambers,* 805 S.W.2d at 461.

We overrule her fourth issue.

## EFFECTIVE ASSISTANCE OF COUNSEL

Hunter's second issue is conditionally submitted. She asserts it only in the event we determine that her motion to suppress evidence was not timely. The State does not contest the timeliness of the

motion and we have addressed it on the merits. Consequently, we do not address her second issue.

## CONCLUSION

Finding that the evidence is legally and factually sufficient to sustain her conviction and that the court did not err in failing to suppress the evidence seized under a defective search warrant, we affirm the judgment.