IN THE COURT OF CRIMINAL APPEALS

                                   OF TEXAS

 

                                                                              

                                                               NO.
PD-1814-05



 

 

                                            FREDDIE JAMES SMITH, Appellant

 

                                                                             v.



                                                                              

                                                             STATE
OF TEXAS

 





                   ON APPELLANT=S PETITION FOR DISCRETIONARY REVIEW

                               FROM
THE FOURTEENTH COURT OF APPEALS

                                                             HARRIS COUNTY



 

Cochran, J., delivered the opinion of the Court, in which Meyers, Price, Womack, Johnson, Keasler,
Hervey and Holcomb, JJ., joined.  Keller,
P.J., dissented.

 

O P I N I O N 

 

In this case of first impression, we
address whether a search warrant is defective if the affiant swore before the
magistrate that the facts within the affidavit were true, but he failed to sign
the affidavit.[1]  








Police officers obtained a search
warrant as a part of their investigation of appellant for identity theft and
fraud.  Although the affiant swore before
the magistrate to the truth of the facts within the affidavit, he forgot to
sign it.  Not noticing that omission, the
magistrate signed the search warrant, and the officers executed it.  While searching appellant=s house, the officers found two
shotguns and he was charged with possession of a firearm by a felon.  Because the officer failed to sign his
affidavit, appellant sought to suppress the evidence obtained during the
search.  The trial court denied the
motion to suppress, appellant pleaded guilty to possession of a firearm by a
felon, and he was sentenced to 10 years= imprisonment.  The court of appeals held that an affidavit
need not be signed to be properly sworn.[2]   We agree and hold that the failure to sign a
search warrant affidavit does not, by itself, invalidate the warrant if other
evidence proves that the affiant personally swore to the truth of the facts in
the affidavit before the issuing magistrate. 

                                                                             I.








In December of 2002, Lisa Stark
contacted Officer Thomas Griffin of the Houston Police Department to report an
identity theft.  Ms. Stark had received a
call from Citibank informing her that someone had opened a Visa account in her
name at Gordon Jewelry and had tried to open an account at Zales.  She had also received a letter from the U.S.
Postal Service (USPS) confirming her change of address to 62102 Rand Street, but she had not
submitted any such request.  In June of
2003, Ms. Stark received a call from American Express informing her that her
account was past due in the amount of $10,000. 
Ms. Stark told American Express that she did not open the account and
knew nothing about the charges.  American
Express told Ms. Stark that it sent the credit card to 62102 Rand Street.  

Officer Griffin, who had eleven years= experience in the forgery division,
then contacted a U.S. Postal Inspector, who told the officer that two
additional change-of-address forms had been sent to the USPS changing an
address to 62102 Rand Street.  Officer
Griffin also contacted the mail carrier assigned to 62102 Rand Street, who said that he had
been delivering mail to Ms. Stark at that address. 

Officer Griffin drafted and presented
his Affidavit in Support of a Search Warrant to District Judge William
Harmon.  The affidavit set out all the
facts pertaining to Officer Griffin=s investigation of the identify theft
of Ms. Stark.  Officer Griffin swore to
the facts in the affidavit and requested Judge Harmon to authorize a search of
the residence at 62102 Rand Street.  Judge
Harmon signed and issued the search warrant, and the police searched appellant=s home and found two shotguns.  








Appellant filed a motion to suppress
evidence, and the trial court held a hearing without live testimony.  Both Officer Griffin and Judge Harmon
submitted affidavits.  In his affidavit,
Officer Griffin stated that he personally swore before Judge Harmon to the
truth of the facts set out in the affidavit and explained that his failure to
sign the probable cause affidavit was a mistake.  Judge Harmon, in his affidavit, stated that
he did not specifically remember the incident in which Officer Griffin
requested the search warrant, but he said that it is his Astandard practice@ to have the police officer swear
that Athe affidavit [is] true and correct
to the best of his or her knowledge.@ 
Judge Harmon stated that he had no reason to doubt that he followed his
standard practice in this case.  








After the trial court denied the
motion to suppress, appellant pleaded guilty and appealed the pretrial
ruling.  The court of appeals affirmed
the trial court=s ruling, holding that, when Officer Griffin swore before
Judge Harmon, the affidavit was Asolemnized.@[3] 
In support of its holding, the court relied on Selph v. State[4]
and Vance v. State.[5]   The court of appeals concluded that, because
the warrant, signed by Judge Harmon, stated that Officer Griffin swore to the
truth of the facts contained in the affidavit and the warrant and affidavit
were stapled together, the two documents could be read as one.[6]  Thus, under Selph, the affidavit was
properly sworn.[7]  The court of appeals also relied on Vance
in holding that it is the oath of the affiant that solemnizes the affidavitBnot the signature.[8]
 Because Officer Griffin swore to the
truth of the affidavit, he took an oath and solemnized the affidavit.  Therefore, the court found the affidavit
sufficient for the issuance of the search warrant.[9]

                                                                            II.


The Code of Criminal Procedure makes
it clear that an affiant must swear that he 
has  knowledge of the facts within
his written affidavit and that those facts establish probable cause.[10]  Article 18.01(b) reads:

No search warrant shall issue for
any purpose in this state unless sufficient facts are first presented to
satisfy the issuing magistrate that probable cause does in fact exist for its
issuance.  A sworn affidavit setting
forth substantial facts establishing probable cause shall be filed in every
instance in which a search warrant is requested[.][11]

 

Similarly, the United States
Constitution states that Ano Warrants shall issue, but upon probable cause, supported
by Oath or affirmation, and particularly describing the place to be searched,
and the persons or things to be seized.@[12] 
Neither document, however, specifically requires a signature;
they require only an oath.  













The purpose of this oath is to call
upon the affiant=s sense of moral duty to tell the truth and to instill in him
a sense of seriousness and responsibility.[13]   When an individual swears under oath,
society=s expectation of truthfulness
increases and the legal consequences for untruthfulnessBprosecution for perjury, for exampleBmay be severe.  The purpose of the written affidavit is to
memorialize the affiant=s recitation of the facts, conclusions, and legal basis for
the issuance of the search warrant.[14]  Without a written affidavit, citizens and
courts would not be able to determine if the search warrant had been properly
issued unless the affiant physically appeared before the trial judge after the
search to recount the factual basis for requesting the search warrant.[15]  By then, the affiant may have relocated or
for some other reason become unavailable. 
Even if the affiant were still available, his memory of both the
specific facts and his conclusions may have faded.  The purpose of the affiant=s signature, however, is
different.  It memorializes the fact that
he took the oath; it is not an oath itself.













This court has never addressed the
question of whether an affidavit under article 18.01(b) requires the affiant=s signature in addition to an oath.[16]  Two Texas appellate courts have addressed
this issue.  In Hunter v. State,[17]
the Waco Court of Appeals held that a signature was necessary to constitute a Asworn affidavit@ under article 18.01(b).  The court relied on the common usage of the
word Aaffidavit@ and indicated that it usually
requires a signature.[18]  But the San Antonio Court of Appeals in Vance
held the oppositeB that the lack of a signature would not invalidate the
affidavit if it could be shown that the affidavit was solemnized by other
means.[19]  Courts in other states have also addressed
this issue.[20]  We agree with Vance and the majority
of the out-of-state courts and hold that the failure to sign the warrant
affidavit does not invalidate the warrant if other evidence proves that the
affiant personally swore to the truth of the facts in the affidavit before the
issuing magistrate. 

The present situation might usefully
be compared to that of self-proved wills. 
A will may be made self-proved by the affidavits of the testator and his
attesting witnesses, as long as the affidavits are signed and certified in
accordance with the specific statutory requirements.[21]  A self-proved will may be admitted to probate
court without the need for testimony of a subscribing witness,[22]
but a will is not invalid simply because it does not contain the statutory
affidavits.  It merely does not qualify
as a self-proved will, and the proponent of the will must call one or more of
the attesting witnesses to testify.[23]   













Although the affiant=s signature on an affidavit serves as
an important memorialization of the officer=s act of swearing before the
magistrate, it is that act of swearing, not the signature itself, that is
essential.  It is important, too, that
the law retain some flexibility in the face of technological advances.  For example, the federal courts and some
state courts, now permit telephonic search warrants,[24]
and one can foresee the day in which search warrants might be obtained via
e-mail or a recorded video conference with a magistrate located many miles
away.  In a state as large as Texas,[25]
such innovations should not be foreclosed by the requirement of a signed
affidavit if the officer=s oath can be memorialized by other, equally satisfactory,
means.  We leave those potential future
changes to the Texas Legislature, but we should not stand in the way of the
future by declaring that all affidavits, which are properly sworn to but
unsigned, are necessarily invalid.  That
is not to condone carelessness or sloppiness in either police procedure or
judicial oversight.   Forgetfulness or
carelessness in the formalities of an affidavit may well indicate to either the
issuing magistrate or the reviewing court that the officer is forgetful or
careless in his factual statements as well. 
Such forgetfulness may affect the credibility of the officer, but that
is a matter for magistrates and trial courts. 
It is sufficient for today to simply conclude that an affiant=s failure to sign his affidavit is
not necessarily fatal if it can be proved by other means that he did swear to
the facts contained within that affidavit before the magistrate.

                                                                            III.








Turning to the present case, three
pieces of evidence prove that Officer Griffin did personally swear, before
Judge Harmon, to the truth of the facts in his affidavit.  First, Officer Griffin submitted a signed
affidavit at the suppression hearing stating that he did swear before Judge
Harmon that the facts in the affidavit were Atrue and correct to the best of his
knowledge.@ 
Second, Judge Harmon submitted a signed affidavit stating that, while he
does not remember this specific instance, it is his Astandard practice@ to have affiants swear to the
truthfulness of their affidavits.  Third,
the warrant to which Officer Griffin=s unsigned affidavit was attached,
stated that the affiant swore before the magistrate.  This warrant is signed by Judge Harmon.  Therefore, we conclude that there is ample
evidence showing that Officer Griffin=s affidavit was sworn to under oath
and that the affidavit and search warrant are valid under article 18.01(b). 

The appellant argues that upholding
the validity of an affidavit when the affiant=s signature is missing from the jurat
violates the AFour Corners Rule@ because courts must look to evidence
outside of the four corners of the affidavit to determine whether the affiant
swore to its truth.[26]  The Afour corners@ doctrine states that a court is to
determine whether the magistrate had sufficient facts to establish probable
cause to issue a search warrant based upon the Afour corners@ of the affidavit.[27]  The four corners rule applies only to the
assessment of probable cause; it does not apply to the issue of whether the
affiant swore to the affidavit=s truthfulness.  The Afour corners@ rule, then, is not applicable in
this case.

The appellant also argues that an
affidavit is, as a matter of law, not an Aaffidavit@ unless it is signed by the affiant.  But as discussed above, there is no statutory
requirement that an affidavit be signed. 
Article 18.01(b) requires an oath, not a signature.








Finally, appellant argues that the Agood faith@ exception to the exclusionary rule
set out in article 38.23(b)[28]
does not apply to the formal portions of an affidavit, such as the affiant=s signature.  In the court of appeals, Justice Edelman
wrote a short concurrence in this case. 
He concluded that appellant=s challenge to the validity of the
unsigned affidavit was Amoot,@ as the Texas statutory Agood faith@ exception would uphold the action of
the officers because they Awere acting in objective good faith reliance on the warrant.@[29] 
We need not address the applicability of the Agood faith@ exception in this case because we
have concluded that the warrant was valid despite the fact that Officer Griffin
failed to sign the affidavit.

We therefore affirm the judgment of
the court of appeals.          

 

Delivered:  November 22, 2006

Publish











[1]
We granted review on one ground:

The trial court abused its discretion in denying the
Appellant=s Motion
to Suppress evidence, where the search warrant was unsigned, and where the good
faith exception does not apply. 





[2]
Smith v. State, No. 14-04-00328-CR, 2005 Tex. App. LEXIS 7621 (Tex. App.BHouston [14th Dist.] Sept.
13, 2005) (not designated for publication).





[3]
Smith, 2005 Tex. App. LEXIS 7621, at *4-5.





[4]
Selph v. State, No. 14-03-01112-CR, 2005 Tex. App. LEXIS 2854 (Tex. App.BHouston [14th Dist.] April
14, 2005, no pet.) (not designated for publication).  In Selph, the affiant did not sign the
affidavit.  Id. at *8.   In the warrant, the magistrate stated that
the officer swore before him that the facts in the affidavit were true.  Id. at *9. 
The court in Selph held that when the magistrate states in the
warrant that the affiant swore to his statement, the affidavit may be
incorporated by reference into the warrant when the two are stapled
together.  Id. 





[5]
Vance v. State, 759 S.W.2d 498 (Tex. App.BSan
Antonio 1998, pet. ref=d).  In Vance, the facts were the same as
they are here:  the police officer swore
before the magistrate but forgot to sign the affidavit; the judge issued the
warrant; and the search yielded the evidence that resulted in the defendant=s conviction.  Id. at 499-500.  The Vance court held, AIt is the oath of the affiant that
solemnizes his affidavit@B not his signature.  Id. at 500.  The court concluded that if the jurat is
defective, the fact that the affidavit was properly sworn to may be shown by
other evidence.  Id. 

 





[6]
Smith, 2005 Tex. App. LEXIS 7621, at *4-5.





[7]
Id.





[8]
Id. at *4.





[9]
Id. at *5.





[10]
Tex. Code Crim. Proc. art.
18.01(b).





[11]
Id. (emphasis added).





[12]
U.S. Const. amend. IV.





[13]
See United States v. Turner, 558 F.2d 46, 50 (2nd Cir. 1977)
(AAn >Oath
or affirmation= is a
formal assertion of, or attestation to, the truth of what has been, or is to
be, said.  It is designed to ensure that
the truth will be told by insuring that the witness or affiant will be
impressed with the solemnity and importance of his words.  The theory is that those who have been
impressed with the moral, religious or legal significance of formally
undertaking to tell the truth are more likely to do so than those who have not
made such an undertaking or been so impressed.@);
United States ex rel. Pugh v. Pate, 401 F.2d 6, 7 (7th Cir.
1968) (stating that the oath requirement forces someone to take ultimate
responsibility for the facts alleged in the affidavit); State v. Tye,
636 N.W.2d 473, 478 (Wis. 2001) (AAn
oath is a matter of substance, not form, and it is an essential component of
the Fourth Amendment and legal proceedings. 
The purpose of an oath or affirmation is to impress upon the swearing
individual an appropriate sense of obligation to tell the truth.  An oath or affirmation to support a search
warrant reminds both the investigator seeking the search warrant and the magistrate
issuing it of the importance and solemnity of the process involved.  An oath or affirmation protects the target of
the search from impermissible state action by creating liability for perjury or
false swearing for those who abuse the warrant process by giving false or
fraudulent information.@)
(footnotes omitted).





[14]
See Boyer v. Arizona, 455 F.2d 804, 807 (9th Cir. 1972) (Ely,
J., dissenting) (arguing that the court needs to have as much written
documentation relating to the issuance of the search warrant as possible; AThe problem inherent in relying upon
belated oral testimony to find that the existence of probable cause was
demonstrated at an earlier hearing is obvious. 
Memories are blurred by the passage of time and by the wisdom gained
through hindsight.  Critical facts may be
forgotten, and the possible initial uncertainly of the affiant may vanish when
the search proves to be fruitful. 
Inadvertent additions to the remembered conversation are not unlikely.@). 





[15]
Id.





[16]
In Gordon v. State, 29 Tex. Ct. App. 410, 412, 16 S.W. 337, 338 (1891),
two attorneys submitted an affidavit to the court but it lacked their
signatures, a jurat certifying that an oath was administered, or anything Ato indicate that they were sworn to its
contents.@  The court of appeals, relying on a statute
that expressly required the signature of an affiant, held that the affidavit
was deficient and thus invalid.  The
statute upon which the court relied has since been repealed.





[17]
92 S.W.3d 596 (Tex. App.BWaco
2002, pet. ref=d).





[18]
Id. at 601-02.  In Hunter,
the court of appeals noted that article 18.01 does not define the word Aaffidavit,@
and thus it looked to its common usage.  Id.
at 601.  The court consulted the
definition of affidavit in Black=s Law Dictionary:  AAn
>affidavit=
is >[a] voluntary declaration of facts
written down and sworn to by the declarant before an officer authorized to
administer oaths.=@ Id. at 602.  That definition does not expressly require a
signature.  The court looked to Webster=s International Dictionary which
provides a similar definition and adds that A>[a]n affidavit must sufficiently
identify the person who makes it, usually by his subscribed signature.=@
Id.  That definition does not
necessarily require a signature, though it is the Ausual@ mode. 
The court then looked at Tex. Gov=t Code '
312.011(1), which pertains to the construction of civil statutes.  Id. 
That provision states that, Aunless
a different meaning is apparent from the context of the statute in which the
word appears[,]@ an A>[a]ffidavit= means a statement in writing of a fact
or facts signed by the party making it, sworn to before an officer authorized
to administer oaths, and officially certified by the officer under his seal of
office.@  This is indeed the usual definition in Texas
of an affidavit.  But that definition
does not mean that every Aaffidavit@ that is properly sworn to, yet
unsigned, is necessarily invalid or Avoid.@  
In Hunter, the court of appeals concluded that the unsigned
affidavit did not meet all of the requirements of the civil Government Code
statute and hence it did not meet the Asworn
affidavit@
requirement of article 18.01(b).  Id.  Nonetheless, the court of appeals upheld the
search pursuant to the defective warrant under the good faith exception to the
warrant requirement under article 38.23(b). 
Id. at 604.





[19]
Vance, 759 S.W.2d at 499.





[20]
Several states have held that a signature on the affidavit is not essential to
prove the validity of that affidavit.  See State v. Colon, 644 A.2d 877, 883  (Conn. 1994) (A>the jurat is simply evidence of the
fact that the affidavit was duly sworn to by the affiant, and, in the event of
its omission, the fact that the affidavit was properly sworn to may be proven
by other evidence=@) (quoting White v. State, 702
P.2d 1058, 1061 (Okla. Crim. App. 1985)); Bigler v. State, 602 N.E.2d
509, 516-517 (Ind. App. 1992) (AThe
jurat is not a part of the affidavit, but simply evidence that an oath was
taken. . . . [O]mission of a jurat is not fatal to the validity of an affidavit
so long as it appears either from the instrument itself or from evidence
aliunde, that the affidavit was, in fact, duly sworn to before an authorized
officer.@); State
v. Journey, 562 P.2d. 138, 141 (Kan. Ct. App. 1977) (same); People v.
Tice, 558 N.W.2d 245, 247 (Mich. Ct. App. 1996) (same); Powell v. State,
355 So.2d 1378, 1380 (Miss. 1978) (applying rule to magistrate=s missing signature); People v.
Zimmer, 112 A.D.2d 500, 501 (N.Y. App. Div. 1985) (rule applied to
affiant); State v. Flynn, 235 S.E.2d 424, 425 (N.C. App. 1977)
(magistrate); State v. Nunn, 783 P.2d 26, 27 (Ore. Ct. App. 1989)
(magistrate); State v. Keith, 978 S.W.2d 861, 868 (Tenn. 1998)
(affiant); Huff v. Commonwealth, 194 S.E.2d 690, 692 (Va. 1973)
(affiant); State v. Davis, 388 S.E.2d 508, 512 (W.Va. 1989)
(affiant).  A few states have held that a
signature is required; in these cases, though, either a statutory provision or
the state constitution required the signature. See Commonwealth v. Dozier,
366 N.E.2d 1270 (Mass. App. Ct. 1977) (holding that an unsigned affidavit did
not meet statutory requirement); Commonwealth v. McAfee, 326 A.2d 522
(Pa. Super. Ct. 1974) (holding that an unsigned affidavit did not meet the
state constitutional requirement to constitute a valid affidavit).





[21]
See Tex. Prob. Code '
59(a).





[22]
See id. ' 59(b).





[23]
See Cutler v. Ament, 726 S.W.2d 605, 607-08 (Tex. App.BHouston [14th Dist.] 1987,
writ ref=d
n.r.e.).





[24]
Telephonic warrants are permitted under the Federal Rules of Criminal
Procedure.  Fed. R. Crim. P. 41(d)(3).  In these instances, the officer requesting the
search warrant does not sign an affidavit but swears to the truth of his
statements.  Fed. R. Crim. P. 41(d)(3)(B)(i).  Several states also allow telephonic
warrants, including Alaska, Arizona, California, Colorado, Delaware, Idaho,
Illinois, Minnesota, Nebraska, and South Dakota.  See Justin H. Smith, Note, Press
One for Warrant:  Reinventing the Fourth
Amendment=s Search
Warrant Requirement Through Electronic Procedures, 55 Vand. L. Rev. 1591, 1607-1613
(2002).  Further, Aadvances
in digital imaging, remote video transmission, cellular communication, and
encryption technology should further enhance the reliability and desirability
of telephonic search warrants.@
Id. at 1595.





[25]
For example, in some rural areas of Texas there may be, on occasion, a single
magistrate available within several counties. 
Requiring the affiant to spend the time traveling from the site subject
to a legitimate search to the magistrate, physically standing in front of him,
signing the affidavit, personally obtaining the signature of the magistrate on
the warrant, and then traveling back to the search site to execute that warrant
may well be a practical deterrent to officers. 
This is especially true when officers are engaged in the investigation
of rapidly unfolding events and have a legitimate need to act quickly to
prevent further crime and preserve evidence. 
See generally, Geoffrey P. Alpert, Telecommunications in the
Courtroom:  Telephonic Search Warrants,
38 U. Miami L. Rev. 625, 634
(1984) (noting that states such as Arizona and California were the first to
enact legislation for telephonic search warrants because they have Awide open spaces and great distances
between cities and judges@).

The United
States and Texas Constitutions have a definite preference for searches under
warrant, but if the cost, in terms of time, effort, and the likelihood of
escape, are too great, officers (and judicial officers after them) may well
seek opportunities to avoid the warrant requirement and, instead, act without a
warrant and hope that there is an exception to the warrant requirement that
will, post hoc, justify their conduct. 
See generally Ornelas v.
United States, 517 U.S. 690, 699
(1996) (AThe
Fourth Amendment demonstrates a >strong
preference for searches conducted pursuant to a warrant,=and
the police are more likely to use the warrant process if the scrutiny applied
to a magistrate=s
probable-cause determination to issue a warrant is less than that for
warrantless searches.  Were we to
eliminate this distinction, we would eliminate the incentive.@) (citation omitted); Illinois v.
Gates, 462 U.S. 213, 236 (1983) (AIf
the affidavits submitted by police officers are subjected to the type of
scrutiny some courts have deemed appropriate, police might well resort to
warrantless searches, with the hope of relying on consent or some other
exception to the Warrant Clause that might develop at the time of the search .
. . . Reflecting this preference for the warrant process, the traditional
standard for review of an issuing magistrate=s
probable-cause determination has been that so long as the magistrate had a >substantial basis for . . .
[concluding]= that a
search would uncover evidence of wrongdoing, the Fourth Amendment requires no
more.@); Trupiano
v. United States, 334 U.S. 699, 705 (1948) (AIt
is a cardinal rule that, in seizing goods and articles, law enforcement agents
must secure and use search warrants wherever reasonably practicable.  This rule rests upon the desirability of
having magistrates rather than police officers determine when searches and
seizures are permissible . . . . In their understandable zeal to ferret out
crime and in the excitement of the capture of a suspected person, officers are
less likely to possess the detachment and neutrality with which the
constitutional rights of the suspect must be viewed.@)
(internal citations omitted); Swearingen v. State, 143 S.W.3d 808, 810
(Tex. Crim. App. 2004) (following Supreme Court precedent and stating that this
Court has a Astrong
preference@ for
search warrants).





[26]
Appellant=s Brief
at 14.





[27]  Hankins v. State, 132 S.W.3d 380,
388-89 (Tex. Crim. App. 2004) (holding that there were insufficient facts
within the Afour
corners@ of the
affidavit to establish probable cause); see also State v. Colon, 644
A.2d 877, 882-883 (Conn. 1994) (rejecting defendant=s
claim that Athe four
corners rule@ that
applies to the determination of probable cause in a search warrant also applies
to the signing of the jurat; magistrate=s
failure to sign the warrant jurat did not invalidate the warrant; concluding
that Aalthough
it is preferable that every affidavit contain a completed jurat, the omission
of, or a defect in, the jurat does not affect the validity of a warrant issued
upon probable cause when it is proven by extrinsic evidence that the supporting
affidavit was properly sworn to by the complainants.  Any other conclusion would impose an undue
penalty on law enforcement for an inadvertent omission on the part of the
issuing magistrate.@)
(internal citation omitted).





[28]
Tex. Code Crim. Proc. art.
38.23(b) reads:

It is an exception [to the exclusionary rule] that the
evidence was obtained by a law enforcement officer acting in objective good
faith reliance upon a warrant issued by a neutral magistrate based on probable
cause. 





[29]
Smith, 2005 Tex. App. LEXIS 7621, at *10-11 (Edelman, J., concurring).